Opinion filed November 29, 2007











 
 
  
 
 







 
 
  
 
 




Opinion filed November 29,
2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00147-CV 

                                                    __________

 

                             IN THE INTEREST OF M.R.A., A CHILD

 



 

                                          On
Appeal from the 35th District Court

 

                                                          Brown
County, Texas

 

                                             Trial
Court Cause No. CV 05-05-204

 



 

                                              M
E M O R A N D U M   O P I N I O N                      

 

Donald
and Francis Allgood appeal from the trial court=s
order terminating their parental rights to M.R.A.  We affirm.

The
trial court found that Donald and Francis knowingly placed or knowingly allowed
M.R.A. to remain in conditions or surroundings that endangered the physical or
emotional well-being of the child.  Tex.
Fam. Code Ann. '
161.001(1)(D) (Vernon Supp. 2007).  The trial court further found that
termination was in the best interest of M.R.A.  Tex. Fam. Code Ann. '
161.001(2)  (Vernon Supp. 2007).








The
Allgoods argue in two issues on appeal that the evidence is legally
insufficient to support the trial court=s
findings.  The burden of proof at trial in parental termination cases is by
clear and convincing evidence.  Tex.
Fam. Code Ann. '
161.001 (Vernon Supp. 2007); In re J.F.C., 96 S.W.3d 256, 263 (Tex.
2002).  Clear and convincing evidence means the measure or degree of proof that
will produce in the mind of the trier of fact a firm belief or conviction as to
the truth of the allegations sought to be established.   Tex. Fam. Code Ann. ' 101.007 (Vernon 2002); J.F.C.,
96 S.W.3d at 264.  This heightened burden of proof results in a heightened
standard of review. 

When
determining legal sufficiency, we review all the evidence in the light most
favorable to the finding Ato
determine whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true.@ 
J.F.C., 96 S.W.3d at 266.  To give appropriate deference to the
fact-finder=s
conclusions, we must assume that the fact-finder resolved disputed facts in
favor of its finding if a reasonable fact-finder could do so.  Id.  We
disregard all evidence that a reasonable fact-finder could have disbelieved or
found to have been incredible.  Id.  This does not mean that we must
disregard all evidence that does not support the finding.  Id. 
Disregarding undisputed facts that do not support the finding could skew the
analysis of whether there is clear and convincing evidence. Id. 
Therefore, in conducting a legal sufficiency review in a parental termination
case, we must consider all of the evidence, not only that which favors the
verdict.  In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005); see City of
Keller v. Wilson, 168 S.W.3d 802, 817 (Tex. 2005).

M.R.A.
was born on March 2, 2000.  The Texas Department of Family and Protective
Services (the Department) was contacted to investigate the neglectful
supervision of M.R.A. when he was four days old.   Sharon Owens, who worked for
the Department, testified that she went to the Allgood home and that the home
was an unsafe environment for M.R.A.  Owens testified that there were several
animals in the home and that the home contained a lot of animal feces on the
floor.  She stated that the home also contained a lot of trash and debris.  The
Department did not remove M.R.A. at that time, but referred the family for
services.  The Department assisted the Allgoods in cleaning and sanitizing the
home.








The
Department again investigated the Allgood family in January 2001.  Allison
Martinez testified that she went to the Allgood home and that the home again
contained a lot of trash and other health hazards for M.R.A.  Martinez stated
that there was a large amount of animal feces that was accessible to M.R.A. 
Martinez stated that there was animal feces underneath M.R.A.=s baby swing and that
M.R.A.=s toys were
piled on top of trash.  The Department created a safety plan in which the
Department instructed the Allgoods not to let M.R.A. crawl on the floor because
of the animal feces and other dangerous objects.  The family was again referred
for services with the Department. 

M.R.A. began attending school in 2004.  Amy Adams,
M.R.A.=s teacher,
testified that M.R.A. had a distinct odor and lack of cleanliness.  M.R.A. told
Adams that the odor was A[c]at
s--t.@  Adams
testified that the odor was Aintolerable@ and Anauseating.@  Adams stated that the
school tried on several occasions to clean M.R.A.=s
shoes to eliminate the odor but that eventually they could not clean the shoes
anymore.  The school contacted the Allgoods to discuss M.R.A.=s hygiene.  Francis Allgood
told the school that there were several cats in the home and that the odor
could be cat urine and feces.  The school requested that M.R.A. keep an extra
pair of shoes at school to wear while at school.  Those shoes remained at the
school.  Adams stated that the other children did not want to play with M.R.A.
because of the odor.  Adams testified that M.R.A.=s
hygiene endangered his emotional well-being because it affected his social
interaction.

The Department again investigated the Allgood family in
April 2005 after reports of M.R.A.=s
poor hygiene at school.  Dallas Kennedy, who worked for  the Department,
testified that Francis was very uncooperative in the Department=s attempts to investigate
the welfare of M.R.A.  Kennedy spoke with M.R.A. at school.  M.R.A. told
Kennedy that M.R.A.=s
parents instructed him not to talk to the Department employees if they came to
school.  M.R.A. also told Kennedy that the family was going to move out of
state because of the Department=s
investigation.  The Allgoods withdrew M.R.A. from school in early May 2005. 
The trial court issued an order for protection of M.R.A. to remove him  from
the Allgood home on May 10, 2005.

Shortly after M.R.A. was removed from the home, Linda
Brumbelow, M.R.A.=s
court-appointed guardian ad litem, visited the Allgood home.  Brumbelow
testified that the home was Aunlivable.@  Brumbelow stated that
there was cat feces on the floor, trash and garbage stacked all over the house,
and hazardous materials throughout the house.  Brumbelow further stated that
there were Adead
frozen cockroaches in the freezer@
and that there was molding food in the refrigerator. Brumbelow testified that
the home had a Anauseating@ smell that makes one
physically ill.  Brumbelow had fleas on her person after a visit in the home. 
Brumbelow testified that the house was unsanitary and unhealthy for M.R.A.








Leatha
Warden testified that she counseled the Allgoods.  Warden began counseling the
Allgoods in October 2005.  Warden visited the Allgood home, and she testified
that she was able to smell a terrible odor before she entered the house. 
Warden stated that, upon entering the home, the smell was so overwhelming it Aburned [her] eyes@ and Anauseated@ her.  Warden saw five cats
in the kitchen area of the home and cat feces on the floor.  Warden stated that
a child should not live in such conditions and that the house was harmful to a
child=s health. 
Warden further stated that the home endangered the child=s physical well-being.

Donald
Allgood testified that the home was unsanitary at the time M.R.A. was removed. 
Donald stated that the home was not a healthy place to live and that it was 
not Aright@ for  M.R.A. to live in
those conditions.  Francis testified that the home contained cat feces and
urine and that the condition of the home at the time M.R.A. was removed
endangered his health.  Francis further testified that M.R.A. has asthma and
that it was dangerous for him to live in the house with cats. 

Stephanie
Hartman, who also worked for the Department, testified that the she worked with
the Allgood family on preparing a family service plan after M.R.A.=s removal.  Hartman stated
that, after M.R.A. was removed, the condition of the Allgoods= home improved but that the
smell remained.  However, the conditions of the home began to deteriorate
again.  Hartman stated that the Allgoods do not have a physical or mental
disability preventing them from keeping the home clean. 

After
viewing all of the evidence, we find that the evidence supports the trial court=s finding that the Allgoods
knowingly placed or knowingly allowed M.R.A. to remain in conditions or
surroundings that endangered the physical or emotional well-being of the
child.  AEndanger@ means more than a threat
of metaphysical injury or a less-than-ideal environment, but the conduct need
not actually injure the child, nor is it necessary that the conduct be directed
at the child.  Phillips v. Tex. Dep=t
of Protective & Regulatory Servs., 149 S.W.3d 814, 817 (Tex. App.C Eastland 2004, no pet.). 
The evidence supports the trial court=s
finding that the unsanitary conditions of the home endangered the physical and
emotional well-being of M.R.A.








Texas
courts have generally considered nine nonexclusive, nonexhaustive factors set
out in  Holley v. Adams in determining the best interest of the child.  Holley
v. Adams, 544 S.W.2d 367 (Tex. 1976).  Those factors are (1) the desires of
the child; (2) the emotional and physical needs of the child now and in the
future; (3) the emotional and physical danger to the child now and in the
future; (4) the parental abilities of the individuals seeking custody; (5)
the programs available to assist these individuals to promote the best interest
of the child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent, which may indicate that the existing parent‑child
relationship is not a proper one; and (9) any excuse for the acts or omissions
of the parent.   Holley, 544 S.W.2d at 372.

There
was testimony at trial that M.R.A. never talked about Donald and Francis after
his removal.  M.R.A. did not act Aexcited@ when taken for a visit
with Donald and Francis, and M.R.A. was reluctant to attend visitation.  There
was also testimony that M.R.A. had stated he considers his foster parents to be
Amom@ and Adad.@

There
was testimony that the Allgood home endangered the emotional and physical
well-being of M.R.A.  The Allgoods continued to allow the conditions of the
home to deteriorate after the Department assisted them in cleaning and
sanitizing the home, and the Allgoods became uncooperative with the
Department.  The evidence is legally sufficient to support the trial court=s finding that termination
is in M.R.A.=s best
interest.  The Allgoods=
issues are overruled.

The
order of the trial court is affirmed.

 

JIM. R. WRIGHT

CHIEF JUSTICE

 

November 29,
2007

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.